## WESTERN CLAY DRAINAGE DISTRICT *v.* DAY.

### Opinion delivered March 17, 1919.

1. APPEAL AND ERROR—QUESTIONS DETERMINED.—Only questions on which a decision is invoked are determined by the Supreme Court.

2. DRAINS—LOANS BY DIRECTORS—LIABILITY.—Directors of a drainage district who elected to loan its funds on terms fixed by themselves, instead of upon the terms fixed by Acts 1907, p. 890, under which the district was organized, are personally liable for the loans.

3. TRIAL—REOPENING CASE—DISCRETION.—No abuse of discretion was shown in the refusal of the court to reopen the case after submission for the purpose of considering testimony taken by deposition without authority.

4. APPEAL AND ERROR—REVIEW—TESTIMONY NOT BEFORE TRIAL COURT.—The Supreme Court will not consider testimony not properly before the lower court.

5. DRAINS — EMPLOYMENT OF ATTORNEY BY DISTRICT.—Though the board of directors of a drainage district was not properly in session when a contract of employment of an attorney was made, if the district continued to accept his services after the contract was made, as if a valid contract had been made, the district became liable for the value of his services.

6. DRAINS—ACTION AGAINST OFFICERS OF DISTRICT—PARTIES.—In suits by landowners against directors of a drainage district on account of money illegally loaned to themselves and others, including the attorney for the district, the latter was a proper party.

7. ATTORNEY AND CLIENT—FEE—SUFFICIENCY OF EVIDENCE.—Allowance by the chancery court to an attorney for a drainage district who conducted litigation to a successful issue, *held* not against the preponderance of the evidence.

Appeal from Clay Chancery Court, Western District; *Archer Wheatley*, Chancellor; affirmed.

### STATEMENT OF FACTS.

Appellees, D. P. Day and other land owners in the Western Clay Drainage District, brought this suit against D. Hopson, Joseph McCracken and J. H. Magee, individually, and as directors of the drainage district, for the purpose of charging the directors with personal liability for various sums of money derived from the sale of the bonds of the district which had been loaned by said directors to themselves and to other persons in violation of the law. There was a prayer for an accounting of the sum so loaned and for judgment against the directors. An amendment to this complaint was filed in which the names of the persons who had borrowed this money was alleged, and these persons were made parties defendant pursuant to the prayer of the amendment to the complaint, although no judgment was prayed against any of the persons named in the amendment. Among the persons so named in the amendment was G. B. Oliver, who filed an answer and cross-complaint against the drainage district. In this answer Oliver admitted having borrowed the sums alleged to be due in the complaint, but by way of cross-complaint against the drainage district alleged that the drainage district was indebted to him in the sum of $2,500 for professional services. His cross-complaint was so amended as to allege the sum due for services to be $3,500. The appellant drainage district filed a motion to strike out the name of Oliver as a party defendant, and also a motion to strike out the cross-complaint of Oliver and a demurrer to his answer and cross-complaint,

all of which were overruled and exceptions were saved by the drainage district. The drainage district then filed its answer to the cross-complaint of Oliver in which liability in any sum for services rendered was denied.

The drainage district was organized pursuant to an act of the General Assembly of 1907 (Act 368, Acts 1907, page 890), and the amendments thereto, and D. Hopson, A. B. McKinney and H. H. Williams were appointed directors of said district. McKinney and Williams, upon the expiration of their terms, were succeeded by appellants McCracken and Magee. The act authorized the directors to divide the district into sub-districts, and pursuant to this authority five of these sub-districts were organized. The act provided that the directors might issue bonds for the purpose of raising the necessary funds to construct the proposed improvement in any sub-district, and that only the lands in a particular sub-district should be liable for the bonded indebtedness incurred in constructing the improvement in that sub-district. The act further provided that none of these bonds should be sold for a price less than ninety-five cents on the dollar. Sub-district No. 1 was organized, and $100,000 in bonds were issued for its account, and the records of the district show that these bonds were sold for ninety-three cents, which was $2,000 less than the minimum price for which they could legally have been sold. It was explained, however, by the directors of the district that the bonds had in fact been sold for ninety-five cents and that $2,000 was allowed the purchaser for having the bonds printed and for certain other expenses incident to their issuance. Later four other sub-districts were organized and bonds were issued for the account of each of them so that for the entire district bonds in excess of $400,000 were issued.

The act creating the district authorized the directors to loan the money of the various sub-districts until needed to pay the cost of the proposed improvements, and to take as security therefor first mortgage bonds on real estate. After selling the bonds the directors proceeded to make loans of money to themselves and to numerous other par-

ties. These loans appear to have been made without regard to the requirements of the act authorizing them, and the directors seek rather to defend their good faith than the legality of their actions.

Upon the filing of the suit by the land owners the directors and certain of the borrowers began to comply with the law either by repaying the loans or by giving the mortgages required by law, so that at the time of the final hearing most of the money had been legally accounted for. It appears, however, that certain loans were made of funds belonging to two of the sub-districts which had not been repaid or secured as required by law, and as to these sub-districts no relief as prayed was granted the land owners for the reason stated by the court below that none of them owned land in these sub-districts and were not, therefore, interested in those funds. The court, however, found the balances due to the sub-districts in which the lands of the plaintiffs were situated and rendered judgment against those borrowers and the directors personally. There was no controversy as to the sum loaned Oliver, who offered to pay the balance due by him after deducting a fee for legal services which he claimed. The court fixed Oliver's fee at $2,000 and both Oliver and the district have appealed from this allowance. The court also held that the cause of action against the directors for the $2,000 representing the price at which the bonds of sub-district No. 1 had been sold below the minimum price fixed by law was barred by the statute of limitations. The directors have appealed from the decree fixing personal liability against them for the sums of money loaned in violation of the law, and from the allowance of the fee to Oliver; and the director, McCracken, makes the separate defense that he was not a member of the board at the time the loans were made. Other facts will be stated in the opinion in connection with the discussion of the points stated above.

*F. G. Taylor,* for appellants Western Clay Drainage District and Joe M. McCracken.

1. It was error to hold that McCracken was liable as director of the district for the loan mentioned in the decree and to render judgment against him for the amount for which the court held appellees could maintain this suit. No loans were made while he was a director, but that two of the loans were renewed to Polk and Hopson. Acts 1909, p. 827, § 12. A director is not liable for the wrongful acts of his predecessor unless he sanctions or approves. Innocent directors are not liable for the misprision of their codirectors. The presence of a director at a meeting at which the previous minutes of a meeting are read and approved does not make him personally liable for an *ultra vires* investment ordered at a previous meeting. 7 Thompson on Corp., § 8513. The remedy against the borrowers must be first exhausted before suing the directors. 95 Ark. 124.

2. The presence of Oliver was not necessary. He was not a necessary party to the suit. The suit was simply against the directors for misappropriating the funds of the district, and his presence was not necessary in order that the court might determine the question simply because said directors had illegally loaned him a part of said funds. Kirby's Digest, § 6011; 70 Ark. 444.

The cause of action in Oliver's cross-complaint is an action at law pure and simple, and he can not enforce it in a court of equity against said district over its objections. 7 Ark. 520; 13 *Id.* 630; 26 *Id.* 649; 27 *Id.* 97; 48 *Id.* 331; *Ib.* 167.

The demurrer to the cross-complaint should have been sustained. Cases *supra.* [Parties having independent rights are not proper parties to any kind of an action.] 105 Ark. 581; 27 *Id.* 581. Oliver was never employed by the district other than as stated by him and Mrs. Skinner. His conversations with members of the board at times could not bind the district, as it was a corporation and could not make a contract except at a meeting of its directors at which all were present or had notice. 55 Ark. 473; 62 *Id.* 33; 118 *Id.* 157; 197 S. W. 1163. The only way Oliver could have been allowed an additional fee

was to have rescinded the original contract rescinded by mutual consent at a meeting of the board of directors and then made a new contract. Any other contract would be void. 6 C. J. 337, § 311, and notes 50-1-2; 114 Ark. 289; 57 *Id.* 93.

Oliver's fee is excessive. The Caton case settled the law of the Curtis case, and all that was necessary to do was to call the attention of the court to the fact by the plea of *res adjudicata.* Two thousand dollars was an unreasonable fee, the lawyers who testified stand eight to seven for a much smaller fee. Oliver was a party to the illegal acts of the directors and can not recover. He must come into court with clean hands.

*G. B. Oliver,* for appellee D. Hopson.

Hopson appeals from that part of the decree allowing plaintiff's attorney a fee for the prosecution of the suit and the failure of the court to tax the costs of the special master appointed to state an account against plaintiffs below. On these points appellee adopts the brief filed by G. B. Oliver, and in addition submits that the court erred in fixing a fee and declaring a lien on the judgment. Act No. 293, Acts 1909, p. 892, § § 1, 2. There was no contract between the attorney and the district. He was employed by the plaintiffs below and not by the district nor was it his *client.* 6 C. J. 567, § 5; Century Dictionary, *"Client;"* Rapalje & Lawrence, Law Dic., *"Client,"* p. 220.

2. Appellees D. P. Day *et al.* complain that the court erred (1) in holding that plaintiffs could not recover because none of them owned land in Subdistrict No. 5, and (2) in holding that the sum of $2,000 alleged to have been embezzled by D. Hopson was barred by limitation. Appellees are the only parties to this litigation appealing on these points. The district only appeals from that part which allows G. B. Oliver a fee of $2,000 in the case of *Curtis* v. *Western Clay Drainage District.* McCracken only appeals from that part of the decree in which a judgment is rendered against him for the amounts found due Subdistrict No. 3. Appellees are

therefore appellants and not appellees on the two alleged errors. They have not prayed an appeal or a cross-appeal. 122 Ark. 530-537. The pretended appeal of plaintiffs should be dismissed. Plaintiffs below have no lands in Subdistrict No. 5 and no interest in the finances thereof and could not maintain a suit in regard thereto. 25 Ark. 301; 93 Atl. 140; 162 N. W. 1073; 116 N. E. 434.

4. Drainage districts are *quasi*-public corporations and perform some of the functions of government. 14 Cyc. 1026 (c); 10 A. & E. Enc. Law, 233; 87 Ark. 8. Their officres are therefore *quasi*-public officers, and the statute of limitations is applicable. 24 Cyc. 1050 (j), *Ib.* 1053 (2.). Ignorance of the cause of action does not prevent the statute from running. 85 Ark. 584; 61 *Id.* 527. The records of the district were public records and open to examination. One is chargeable with notice of what he could have ascertained by consulting public records. 17 R. C. L., § 105; 85 Pac. 90; 5 L. R. A. (N. S.), § 986.

If there was any liability of Hopson, it was from neglect or misconduct, and the statute runs from the breach of duty and not from date of discovery. 17 R. C. L., §§ 132, 218-20; 32 Ark. 281; 80 N. E. 787; 12 L. R. A. (N. S.), 105; 139 Pac. 602; 51 L. R. A. (N. S.), 279; 25 Cyc. 1116 (20) and cases cited. If Hopson was a trustee the general rule would not apply. 25 Cyc. 1152 (b).

*J. L. Taylor,* for appellee G. B. Oliver.

1. Before could be rendered against a borrower he must be made a party to the suit. Here additional and unexpected services were rendered which could not have been in contemplation of the parties. Here we have the "peculiar facts" which render a contract for additional compensation binding and which if the services were received, even without a contract, would bind the district for their value. The proof shows that two of the active directors were informed of the services and that appellee would demand a reasonable fee and assented thereto and that appellee had discussed with the directors the advisability of employing assistant counsel outside the district

and the board consented for appellee to attempt the defense for himself.   6 C. J. 737, § 311.   The fee was reasonable as the preponderance of the testimony shows and should have been allowed by the court below.   The cross-complaint was proper and not demurrable, but stated a good cause of action in equity, and if he had not set it up in this suit he would have been barred.   He was a proper and necessary party.

2.   On the appeal vs. D. P. Day *et al.*   The court did not err in fixing a fee for their attorney and declaring it a lien on the judgment.   The fee was grossly excessive. The audit was had on plaintiffs' motion and judgment for the costs and expenses of it should have been rendered against them.   The audit was unnecessary.   125 Ark. 66-76.   The matter of costs was within the sound discretion of the chancellor.   The books were absolutely correct and the audit an unnecessary expense which plaintiffs should pay and judgment should have been rendered against them.   125 Ark. 66-76, *supra.*

*J. F. Gautney,* for the land owners of Western Clay Drainage District, appellees.

1.   The court erred in holding that plaintiffs could not recover because none of them owned lands in Subdistrict No. 5.   The district was created by Acts 1907 and later amended by act in 1909.   These acts conferred upon the district all rights, powers and privileges usually conferred upon corporations and gave it the right to create subdistricts, but gave the subdistricts no powers as subdistricts for any purpose.   See Acts 1907 and 1909, Acts 1907, Subd. B, p. 896, § 8; Kirby's Digest, § 5008.   The subdistricts have no rights or powers as corporate entities.   Their business is managed by the board of the district.   It was therefore unnecessary to bring suit in the name of the subdistricts, as they do not levy or collect taxes nor erect or construct any improvements or have control of any funds from the sale of bonds, etc.   Bonds are issued by the district, and when sold the funds belong to the district and are paid to the treasurer and by him disbursed on warrants ordered by the directors of said

district. When the directors refuse to bring suit to recover funds unlawfully loaned, no other mode of procedure was open save the one pursued in this case. 124 Ark. 6; 101 *Id.* 172; 9 S. W. 801; 63 *Id.* 446-(7); 80 N. W. 726.

We are not interested in the cross-complaint of G. B. Oliver.

SMITH, J., (after stating the facts). A very forceful argument is made in the brief of counsel for the land-owners to the effect that the court below erroneously held the cause of action for the recovery of the $2,000 item to be barred by the statute of limitations; and that the court was also in error in holding that the land owners bringing this suit had no right to call the directors to account for the loans of money belonging to the sub-districts in which they owned no land. These land owners, however, prayed no cross-appeal, and as no one else raises these questions we dispose of them by saying that they are not properly presented for our decision.

In this connection, it might be said that the drainage district, which has appealed and which could, therefore, raise these questions, has not done so. It is not the practice of this court to search out and decide all the questions which might be said to be presented by a particular record. In private litigation the court is content to pronounce judgment upon those questions only upon which a decision is invoked.

Both Hopson and McCracken have appealed from so much of the decree of the court below as holds them personally liable for the loans of money made in contravention of the statute. But we think the decree in this respect should be affirmed. The act prescribed the terms upon which the funds of the district might be loaned, and if the directors wished to escape any personal liability on that account they should have complied with the law in making these loans. Inasmuch as they elected to loan the money upon terms fixed by themselves rather than upon the terms prescribed by law, the loans must be treated as if they were unauthorized by law and the direc-

tors held responsible for any loss thus incurred. Director McCracken seeks to escape this liability by saying that he was not a director when the loans were originally made. But it affirmatively appears that he was present at a director's meeting at which the land owners requested the directors to bring suit or to authorize suits to be brought to recover the unlawful loans, and McCracken refused to consent to this action upon the ground that such suits would result in a receivership for the entire district; and further that he thereafter consented to the renewal of various loans as they matured, without taking the security required by the law.

It is very earnestly insisted on behalf of the drainage district that the court below should have stricken the answer and cross-complaint of Oliver from the files, and that the fee finally allowed him was excessive. And upon his cross-appeal Oliver insists that the fee allowed was inadequate. In support of his contention that the fee allowed him was inadequate Oliver insists that we should consider the testimony taken in his behalf and found in certain depositions which have been brought up by certiorari. The cause appears, however, to have been submitted to the court for decision on the 25th of June, 1918, and the depositions were taken between that date and July 18, the date on which the court below pronounced a final decree. The court had previously fixed the time within which the testimony should be taken and had apportioned a given number of days to each of the parties. This time had expired some days before the cause was submitted, and during the allotted time much testimony was taken, and it does not appear that the court was requested to extend the time for further proof before taking the case under submission, and no abuse of discretion is shown in the failure of the court below to reopen the case for the purpose of considering testimony which was taken without authority. As the testimony was not properly before the court below we can not consider it now.

The point is made that the board of directors of the district was not properly in session when the contract for Oliver's employment was entered into. This point is answered, however, by saying that thereafter the district continued to accept Oliver's services as if a valid contract therefor had been made, and we proceed to consider the value of these services as shown by the testimony taken on that issue. Before doing so, however, we take occasion to say that no error was committed in refusing to strike Oliver's answer and cross-complaint from the files. The complaining land owners had alleged in their amended complaint the sum of money loaned Oliver, and there was no controversy about the correctness of the sum alleged to have been loaned him. And while the land owners did not ask judgment against Oliver for this sum they did ask judgment against the directors for having loaned Oliver the money stated, and it, therefore, appears that in the proceeding to which Oliver was made a party, judgment was prayed against the directors for the money loaned Oliver. So that even if Oliver were not a necessary party he was a proper party to have before the court in adjudicating the liability of the directors for money loaned him; and while the directors against whom the judgment was asked on account of their loan made to Oliver were the parties who asked that the cause of action as against Oliver be dismissed, we think no abuse of discretion is shown by the failure of the court to dismiss the cause as to Oliver.

Oliver took the depositions of seven lawyers on the question of the fee he was entitled to charge, and all these witnesses placed the fee at a larger sum than the charge made. On behalf of the district the testimony of eight lawyers was taken, all of whom placed the fee at a smaller sum than Oliver sought to charge. The testimony of the attorneys in Oliver's behalf was taken in response to a hypothetical question prepared by him, and that in behalf of the district upon a hypothetical question prepared by the attorney for the district. These questions were lengthy and will not be restated here; but upon a com-

parison of the two hypothetical questions we are of the opinion that the question propounded by Oliver presents more fully than the other the facts in the case upon which the opinion of the attorneys should have been based.

Briefly restated, these facts are as follows: This court, in the case of *Caton* v. *Western Clay Drainage District,* 87 Ark. 8, upheld the validity of the organization of this drainage district and the assessment of the benefits thereunder. Later, in the case of *Martin* v. *Reynolds,* 125 Ark. 163, we decided that a special statute creating a certain drainage district was void on its face for the reason that it made an unauthorized discrimination in the property to be assessed for taxation to pay for the improvement authorized. The section of the statute condemned in the last cited case was an exact copy of a section of the act creating the Western Clay Drainage District. Thereafter the land owners who brought this suit, together with other land owners of the district, employed counsel to resist the collection of further assessments of benefits against the lands in this drainage district. It was shown that these land owners had agreed to pay these attorneys a given per cent. of the assessments then remaining unpaid in the event that the proposed litigation was conducted to a successful issue. The fee thus contracted for would have approximated ten thousand dollars. At that time the district had been in operation for nine years and had issued and sold bonds to the amount of $419,000, and practically all of its work in four subdistricts had been completed by the expenditure of more than $300,000, and about 145 miles of ditches and 25 miles of levees had been constructed. It was shown by the testimony of the engineer of the district that the annual cost of maintenance of the completed work was from three to five thousand dollars and that the assessed and actual benefits of the improvement to the property in the district largely exceeded their cost and that their value depended on their maintenance and upkeep. Oliver conducted this litigation to a successful issue as appears from the decision of this court in the

case of *Curtis* v. *Hopson,* 127 Ark. 344, and we can not say that the action of the chancellor in allowing a fee of $2,000 for the services performed was contrary to the preponderance of the evidence in the case, or that a larger fee should have been allowed, and the allowance of that fee will, therefore, be affirmed.

No reversible error appearing, upon a consideration of the whole record, the decree of the court below will be affirmed.